FILED
 2012 Sep-19 PM 04:00
 U.S. DISTRICT COURT
     N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| OLUBUNMI O. AKINYEMI, | ] |
| Petitioner, | ] |
| v. | ] CASE NO. 1:11-cv-3500-SLB-RRA |
| WARDEN JOHN T. RATHMAN, | ] |
| Respondent. | ] |

## MEMORANDUM OPINION

This is a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2241. The petitioner, Olubunmi O. Akinyemi, is a federal inmate incarcerated at CCM Atlanta. At the time he filed his petition, he was incarcerated at the Federal Correctional Institution in Talladega, Alabama. In his petition, Akinyemi challenges his January, 2011 prison disciplinary conviction for engaging in a sexual act, for which he lost 27 days of good conduct time and social visitation privileges for nine months. In support of his petition, Akinyemi claims that 1) he was denied due process in connection with the disciplinary proceedings and appeals, and 2) the disciplinary proceedings against him were in retaliation for having complained about being strip-searched.

In response to the court's order to show cause, the respondent filed an answer in which he admits that the petitioner has exhausted the administrative remedies available to him, but argues that the petition lacks merit and is due to be denied. By order of the court, the parties were advised that the respondent's answer would be treated as a motion for

summary judgment. The petitioner was advised that he must comply with Rule 56 of the *Federal Rules of Civil Procedure* in responding to the motion for summary judgment. Akinyemi has filed nothing in response to the respondent's answer.

The evidence reveals that on December 4, 2010, Akinyemi was visiting with his wife in the prison's visiting room. *Declaration of Scott Schleder*, Respondent's Exhibit 3, Court Document 5-4 at p. 3. At approximately 8:42 a.m., Akinyemi was given a warning about excessive touching and his wife's blocking the view of the staff from seeing him. *Id.* He was instructed that further violation of the visitation rules would result in disciplinary action and the possible termination of his visit. *Id.* At 10:52 a.m., Akinyemi was seen looking at the visitation officer's desk in a suspicious manner. *Id.* Officer Usry watched Akinyemi as he helped his wife move her chair closer to him while she positioned a gray sweatshirt over her lap, covering her legs. *Id.* Akinyemi then put his right arm, up to his elbow, inside his wife's dress and began moving his arm vigorously in a front and backward motion. *Id.*

Officer Usry reported Akinyemi's actions to the Operations Lieutenant. *Id.* He was advised to continue watching Akinyemi until the duty officer arrived in the visitation room. *Id.* At 11:13 a.m., Officer Usry again observed Akinyemi looking around the visitation room nervously. *Id.* Seconds later, he moved his wife even closer to him and once again put his arm in her dress, moving it vigorously in a front and back motion. *Id.* Simultaneously, Akinyemi's wife put a coke bottle in her mouth and began licking the top of the cap in a sexually suggestive manner. *Id.* At 11:19 a.m., Akinyemi was removed from the visitation room by the duty officer and his visit with his wife was terminated. *Id.*

Akinyemi was placed on administrative detention status. *Id*. At 9:35 p.m. on December 4, 2010, Akinyemi was served with a copy of the incident report. *Id*. at 4. He had a hearing before the Unit Discipline Committee on December 8, 2010. *Id*. Due to the serious nature of the charge, the matter was referred to the Disciplinary Hearing Officer. *Id*. Akinyemi signed the written notification of the hearing, his rights before the hearing, and chose Officer Stacie Gardner as his staff representative. *Id*.

A hearing before the Disciplinary Hearing Officer was held on January 4, 2011. *Id*. Akinyemi's staff representative was present. *Id*. He was advised of his rights and indicated that he understood them. *Id*. Akinyemi made a statement about the incident. He stated that his wife came to visit him with their children. *Id*. He stated that he was praying at the time the officer said he gave Akinyemi a warning and that he was concentrating on his prayer so he would not have been doing anything else. *Id*. He indicated that he moved his wife's chair to comply with the officer's order so she would be where the officer was able to see her. *Id*. Akinyemi maintains that he leaned on his wife's leg for support when he reached over her to help his son with his homework, but he never did anything sexual during the visit. *Id*.

Officer Gardner, Akinyemi's staff representative, stated that she had worked in the visiting room on several occasions when Akinyemi's family was visiting with him. *Id*. She stated that she had observed that Akinyemi does help his children with their homework when they are visiting, and that she had never observed him acting inappropriately during a visit with his family. *Id*.

Akinyemi had initially requested to have a witness present at the hearing. *Id*. However, once the hearing was under way, Akinyemi elected to waive the appearance of his

witness. *Id*. He signed the bottom of the "Notice of Discipline Hearing Before the DHO" form reflecting that he had waived the appearance of his witness. *Id*. Officer Gardner signed as a witness. *Id*.

At the conclusion of the hearing, the DHO determined that Akinyemi committed the prohibited acts of code 205, engaging in a sexual act. *Id.* at 5. The DHO stated the specific evidence relied upon to support his findings:

> It is the decision of the DHO that you committed the prohibited act of code 205, engaging in a sexual act. This decision is based on the statement of the reporting officer. Officer L. Usry stated that on 12-04-2010, at approximately 0842, you were called up to the Visitation Officer's Station and received a warning about excessive touching and about your visitor blocking the observational view of staff. He stated you were told further violation of the rules could result in discipline action and possible termination of your visit.
>
> Officer Usry went on to state that at 1052, you were looking at the Visitation Officer's desk in a suspicious manner. He stated he was observing you and your spouse from the Administration Hallway on the backside of the Visiting Room. He stated he watched as you helped your spouse move her chair close to you, while she inconspicuously placed a grey colored sweatshirt covering her legs. He stated you placed your right arm, up to your elbow, inside the opening of her dress, and your arm began moving vigorously, going in a front and backward motion, while your spouse placed a coke bottle in her mouth and began licking the top of the cap with her tongue in a sexually suggestive manner.
>
> Supporting this decision is a memorandum from Lt. Z. White, dated 12-04-2010. Lt. White reported that he was notified of inappropriate touching with your visitor by Camp staff on this same date. He reported when he interviewed your female visitor (Bisola Akinyemi) she told him, "We did nothing today. I was fevered, can you feel me?" Lt. White stated he advised her she would have to leave institutional grounds. He stated she then stated, "I told him we could do nothing today. I did not feel like it. I was fevered." Lt. White stated he then asked her if she was admitting to inappropriate contact in the past, and stated she responded, "Yes, but we did nothing today. I am fevered. You feel me?" He stated he then told her again to leave the property, and she and her children left.

4

The DHO considered your statement that you did not do anything sexual during your visit, that you were praying when the officer warned you the first time, that you did move your wife's chair in compliance with the officer's order so the [officer] would observe the visit, that you did reach over to help our son once, and that you supported your lean with your hand on your wife's leg. However, the DHO found that the greater weight of evidence sustained the charge of engaging in a sexual act.

Although you denied Officer Usry's observations, his description was found to be more credible than your denial. The DHO found no reason for Officer Usry to fabricate a false charge against you. There was no reason for him to simply pick you out of all other inmates to produce this charge as he gains nothing in doing that. The DHO did find you have a reason not to be completely forthcoming about this incident, in order to avoid the consequences of your actions, and to save your visitor from embarrassment.

The combined observations of your arm being inside your female visitor's dress on two occasions, and you [sic] the descriptions of your vigorous back and forth motion when your arm was there, support the commission of a sexual act. The observation of the location of your hand, and your movement in that specific location would cause any reasonable person would conclude the actions which were observed reveal a sexual manipulation of your visitor's genitalia by your hand. There is no other explanation for this behavior.

The DHO found your visitor's statement to Lt. White to support your claim that nothing sexual took place, but at the same time her further statement to Lt. White, indicating she had engaged in inappropriate behavior with you on past visits only went to further support the conclusion that you were engaging in sexual behavior. It was concluded your visitor would have a reason to make a claim that nothing happened on this occasion, to assist you in avoid[ing] the consequences of this, as she too faced the possibility of being excluded from visits with you if you were found guilty.

The statement of your Staff Representative was considered, as well as the fact that you had no previous discipline history. Yet, this did not speak to the date of this incident, as Officer Gardner was not present when this took place. Regardless of her experience, the facts support the charge. Accordingly, it is the finding of the DHO that you committed the prohibited act of code 205 as charged.

*Discipline Hearing Officer Report*, Respondent's Exhibit 5, Court Document 5-6 pages at 4-5.

As a result, Akinyemi lost twenty-seven (27) days of Good Conduct Time and lost his social visiting privilege for nine (9) months. The DHO offered the following reasons for imposing the sanctions:

> The action/behavior on the part of any inmate to become involved in a sexual act, whether in the inmate visiting room or any other location, poses a serious threat to the health, safety, and welfare of not only the inmate involved, but that of all other inmates and persons involved.  Sexual activities within a correctional setting visiting room or elsewhere, have resulted in serious confrontations in the past, and, therefore, cannot and will not be tolerated. The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be responsible for his actions/behavior at all times.
>
> This DHO Report may be delivered beyond the 10 days required by policy.  This is due to the fact that this officer also conducts hearings at another institution. This causes a delay in the delivery of the written DHO reports back to the institution, due to the equal priority being given to both institutions, the current case load, and the fact that Annual Leave, Training, and days off, interfere with distribution.

*Id.* at 5.

"The federal courts cannot assume the task of retrying all prison disciplinary disputes." *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981), *cert. denied*, 455 U.S. 992 (1982). Instead, when reviewing claims involving prison disciplinary proceedings, a federal court is limited "to determin[ing] whether an inmate receive[d] the procedural protections provided by *Wolff* [*v. McDonnell*, 418 U.S. 539 (1974),] and whether 'some evidence' exists which supports the hearing officer's determination." *Young v. Jones*, 37 F.3d 1457, 1460 (11th Cir. 1994), *cert. denied*, 115 S. Ct. 1437 (1995).

In *Wolff v. McDonnell*, the Supreme Court set forth the following minimum due process requirements to be accorded prisoners facing disciplinary proceedings that could result in the loss of a protected liberty interest such as good time credits: (1) "written notice

6

of the charges must be given" to the inmate at least 24-hours in advance of the proceeding; (2) the inmate "should be allowed to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; and (3) the inmate must be given "a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Wolff*, 418 U.S. at 564-66.

Akinyemi argues that the evidence was insufficient to support the conviction for engaging in a sexual act. This court must uphold a disciplinary decision if "'some evidence' exists which supports the hearing officer's determination."[1] The DHO relied primarily upon the eye-witness testimony of Officer Usry in determining that a sexual act was committed. Clearly, this evidence was sufficient to meet the "some evidence" standard. This claim is due to be DISMISSED.

---

[1] The standard of proof required for a finding of guilt in prison disciplinary proceedings "is necessarily lower than that demanded in criminal parole-probation revocation, or civil proceedings." *Smith v. Rabalais*, 659 F.2d at 546. "[T]he requirements of due process are satisfied if **some evidence** supports the decision by the prison disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (emphasis added).

> This ["some evidence"] standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, *the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board*. . . . Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Id*. at 455-56 (citations omitted) (emphasis added).

Akinyemi further maintains that his due process rights were violated because he was not provided with a copy of the videotape of the visitation room from the date of the visit with his wife when the sexual act occurred, despite having asked to view the videotape on several occasions. In order to comply with due process requirements, "written notice of the charges must be given" to the inmate at least 24-hours in advance of the proceeding; the inmate "should be allowed to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; and the inmate must be given "a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." The petitioner was clearly given sufficient notice of the hearing, and "a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action."

With respect to Akinyemi's claim that he not allowed to view the videotape that would have allegedly proved he did not commit the offense, there is nothing in the record to indicate that such a videotape exists. Akinyemi claims that he first requested to view the videotape on December 6, 2010, two days after the incident in the visitation room with his wife. He claims that he again asked to view the videotape on January 4, 2011 at the disciplinary hearing, and then twice after the hearing.

Disciplinary Hearing Officer Scott Schleder maintains that Akinyemi never requested to view the videotape at the hearing. *Declaration of Scott Schleder*, Respondent's Exhibit 3, Court Document 5-4 at p. 7. However, he adds that he does not know if a videotape existed at the time of the hearing. *Id*. Further, according to Captain William Davis, any video recording made on December 4, 2010, would not have been preserved for later viewing.

8

*Declaration of Captain William Davis*, Respondent's Exhibit 7, Court Document 5-8 at p. 2. Rather, the video recording system used in the visitation room at the time operated on an old VHS system that recorded over itself every 12 to 24 hours. *Id*. Thus, even assuming that Akinyemi had asked during the hearing to view a video of the visitation room recorded on December 4, 2010, it is clear that a videotape of the incident would not have been available. Because there was no videotape in existence at the time of the hearing, Akinyemi was not deprived of due process rights in not being allowed to view a videotape of the date in question. This claim is due to be dismissed.

To the extent Akinyemi argues that errors in the administrative remedy process provide a separate claim for relief, he is incorrect. The scope of due process in the prison disciplinary context is defined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). There is nothing in *Wolff* that requires administrative appellate review of a prison disciplinary proceeding. *See Wolff*, 418 U.S. 539, 563–66. Therefore, Akinyemi's allegations that the handling of his administrative appeals violated his due process rights is without merit and it is due to be dismissed.

Akinyemi further asserts that his due process rights were violated when he was immediately taken into custody following the incident in the visitation room and placed in the Special Housing Unit for thirty days, although there was never an emergency situation or any concern for institutional safety. However, Akinyemi does not have a due process liberty interest in remaining free from administrative segregation because such segregation does not impose an "atypical and significant hardship on the inmate in relation to the ordinary

9

incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). This claim is without merit and it is due to be dismissed.

Finally, Akinyemi argues that the disciplinary proceedings against him were initiated by Officer Usry in retaliation for his having complained about being strip-searched. Specifically, Akinyemi maintains that on November 14, 2010, he was strip-searched of Officer Usry upon his return to the Talladega Camp premises from visitation. *Petition*, Court Document 1 at 3. He contends that prior to that day, he had never been searched in "such a vicious manner by any officer" after visiting with his family. *Id.* Akinyemi states that he "questioned the extent and the nature of such a search and request[ed] the officer to provide an explanation for such and [sic] unwarranted search." *Id.* at 4. According to Akinyemi, Officer Usry was "visibly and obviously upset and felt challenged by" Akinyemi's request. *Id.* He asserts that Officer Usry fabricated the "malicious" story about his December 4, 2010 visit with his family in retaliation for Akinyemi's questioning him about the earlier strip search. *Id.* at 4-5.

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). It is well-established that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains about the conditions of his confinement. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (*citing Farrow*, 320 F.3d at 1248). An inmate may maintain a cause of action for retaliation . . . by showing that a prison official's actions were 'the result of [the inmate's] having filed a grievance concerning the conditions of his imprisonment.'" *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011)(*quoting Farrow*,

320 F.3d at 1248). To succeed on a retaliation claim, the petitioner must establish that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]." *Mosley*, 532 F.3d at 1276.

However, "a prisoner cannot maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report and there is evidence to sustain the conviction." *O'Bryant*, 637 F.3d at 1215.

> If a prisoner is found guilty of an actual disciplinary infraction after being afforded due process and there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report. Whether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact that are decided by the disciplinary panel. . . . To find otherwise would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction after having filed a grievance.

*Id*. at 1215-1216.

In Akinyemi's case, he was sanctioned because he actually violated the prison rules and not because he had questioned the extent and nature of the strip-search by Officer Usry. Because he was found guilty of the disciplinary charges after being afforded the due process required by *Wolff*, Akinyemi cannot prevail on his retaliation claim and it is due to be DISMISSED.

An appropriate order will be entered.

**DONE** this 19th day of September, 2012.

*Sharon Lovelace Blackburn*
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE